FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

2015 MAR -3  A 11: 34

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| MARIA RIVAS ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 1:15 CV283 AJT/TCB |
| ) | |
| OCWEN LOAN SERVICING, LLC ) | |
| *Serve:* ) | |
| CORPORATION SERVICE CO. ) | |
| Bank of America Center, 16th Floor ) | |
| 1111 East Main Street ) | |
| Richmond, VA 23219 ) | |
| ) | |
| Defendant. ) | |

## **COMPLAINT**

1.     Ocwen Loan Servicing, LLC (Ocwen) attempted to collect on a debt not

owed or time barred from Maria Rivas. In addition, Ocwen sent a debt collection letter to

Maria Rivas after being notified that she was represented by counsel and directed to

address all communications to her attorney. This action served to undermine Ms. Rivas'

rights under the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692(c)(a)(2),

§ 1692(e)(2)(A) and (10), in that it was an attempt to circumvent her counsel's advice and

effectiveness. Finally, Ocwen did not respond to Ms. Rivas' Qualified Written Request

within the statutory timeframe, violating the Real Estate Settlement Procedures Act

(RESPA), 12 U.S.C. § 2605(e)-(f).  Jurisdiction over plaintiff's claim lies in this court

pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). Venue is proper in this court as

the communications complained of herein were received by a consumer at her residence in Fairfax County, Virginia.

## Parties

2.      Plaintiff Maria Rivas is an adult resident of Fairfax County. She is a consumer within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(3). Many years ago, plaintiff was the homeowner on the title and obligor of the mortgages of 604 Gibson Drive SW, Vienna, VA 22180, which was then her sole residence.

3.      Defendant Ocwen Loan Servicing, LLC (Ocwen) is a Delaware Limited Liability Company with a principal place of business in West Palm Beach, Florida. Ocwen is a debt collector within the meaning of the FDCPA, 15 U.S.C. § 1692(a)(6), because it uses the mail in a business that regularly collects and attempts to collect debts owed or due to another. Defendant Ocwen is a master servicer and transferee servicer within the meaning of Reg X, 24 C.F.R. § 3500.21(a), because it currently owns the right to perform loan servicing, and received this right through an agreement or understanding.

4.      Ocwen specializes in servicing subprime or delinquent loans and places a major emphasis on resolving delinquency through foreclosure.  Ocwen has been found complicit in some of the worst excesses of the subprime-mortgage meltdown circa 2008. For example, in December 2013, the Consumer Financial Protection Bureau and state authorities ordered Ocwen to provide two billion dollars in relief to homeowners as a result of its systemic misconduct at every stage of the mortgage servicing process. Ocwen was also ordered to refund $125 million to the nearly 185,000 borrowers who had already been foreclosed upon, and was required to adhere to significant new homeowner

2

protections.  In announcing the December 2013, CFPB director Richard Cordray said in a press release, "Ocwen took advantage of borrowers at every stage of the process."

## Facts

### 1. Defendant's Collection Letters

5.        On November 30, 2005, Maria Rivas bought a home at 604 Gibson Drive SW, Vienna, VA 22180. To the best of her present recollection, she financed the purchase with an 80/20 mortgage, both with Washington Mutual. The mortgages featured extremely high fixed rates given prevailing interest rates, including a 10.85% thirty year fixed rate on the second mortgage, 631 basis points over the ten-year yield. Historical average rates for first mortgages in November 2005 were at 6.28%. The high fixed rate and monthly payments of these mortgages potentially indicates steering into unsuitable products.

6.        Subsequently, Ms. Rivas' employer reduced her hours at the same time as her son lost his construction job, resulting in a substantial drop in her household income. Less than three years after the mortgages were originated, Ms. Rivas found herself unable to stay current on her payments.

7.        She lost the home due to foreclosure on the first mortgage, and received no cash for the equity she had established in the house. She moved out and did not receive communications about the home for several years. (Subsequently, the home was demolished and a developer built a McMansion on the same lot.) The second lien mortgage on this home is the subject of this lawsuit.

8.        The loss of her home, resulting from extremely high rates on unsuitable mortgages and employment turmoil was traumatic and caused emotional distress to Ms.

3

Rivas. Nevertheless, she drew some comfort from her understanding that the matter was resolved, especially given that she did not receive any communications about the home for several years. She had come to this understanding through the conduct of Washington Mutual that the foreclosure resolved all outstanding issues on the mortgages they originated for her in 2005.

9.      After many years of silence, on or about November 19, 2013, and December 12, 2013, Ocwen mailed collection letters to Ms. Rivas's Fairfax home.

10.     Ms. Rivas obtained counsel, and on or about February 10, 2014, Ms. Rivas's counsel sent a written letter of dispute requesting verification of the alleged debt. Counsel also informed Ocwen that Ms. Rivas "requests that all future communication with this matter be with her undersigned attorney. Do not contact Ms. Rivas . . . regarding this matter." A copy of this letter is attached hereto as Exhibit A and its contents expressly incorporated herein by reference.

11.     On May 23, 2014, Ocwen sent Ms. Rivas a subsequent collection letter in reference to the same aforementioned debt. A copy of this letter is attached hereto as Exhibit B, and their contents are expressly incorporated herein by reference.

12.     Through this May letter, defendant Ocwen communicated directly with Ms. Rivas regarding the collection of a debt, after it had been informed in writing she was represented by counsel.

13.     This communication violated the FDCPA, which provides that a debt collector may only contact the attorney after it has been informed a debtor is represented by counsel in a given matter.

14.     The May 2014 communication confused and disturbed Ms. Rivas. She felt particularly intimidated when Ocwen contacted her directly, despite having been informed of Ms. Rivas' choice to seek legal representation. Despite consulting a lawyer and being informed of her rights, she continued to be pressed by a debt collector to pay an almost unfathomable amount of money as compared to what she understood her liability to be.

### 2. Defendant's Attempt to Collect on a Debt not Owing or Time-Barred

15.     In its May 23, 2014 letter, defendant appears to claim Ms. Rivas defaulted on a debt due in June 2007, which debt may or may not have been accelerated by the holder of the note at that time or some time thereafter.  By May 2014, more than six years had elapsed since the date of default, and therefore, under Virginia law, Va. Code § 8.3A-118(a), the statute of limitations for any possible claim on the note had expired if the debt had been accelerated in 2007.

16.     Despite multiple inquiries by the plaintiff, defendant has not answered as to whether the debt was accelerated or not. Depending on whether the second mortgage was accelerated, two legal scenarios exist. Under both scenarios, defendant violated the FDCPA.

### a.     If the debt was not accelerated:

17.     If the debt was not accelerated in 2007, some payments are time barred (those over 6 years delinquent), some are within the statute of limitations (those payments due between the statutory time bar and May 23, 2008), and some are not yet even due

5

(those payments not owing under the payment plan until after defendant sought to collect on the amount they stated).

b.    <em>If the debt was accelerated:</em>

18.    To the contrary, if the second mortgage was accelerated, the full amount became owing on the date of the acceleration. Upon information and belief, the age of the mortgage had it been accelerated on or about 2007 prohibits Ocwen, the original creditor, or any other assignee from suing Ms. Rivas on the debt due to the applicable statute of limitations.

19.    Were Ms. Rivas to make a payment on the debt, Ocwen might treat this payment as an agreement to restart the statute of limitations on an otherwise time-barred debt, such that they might sue her for the remaining balance of the debt.

20.    The collection letter sent by defendants does not include any reference to these legal issues in order to deceive a less sophisticated consumer into believing the debt is still legally enforceable.

21.    On information and belief, Ocwen is aware that many consumers do not know that a debt, after a certain number of years, cannot be sued on, and Ocwen is aware that many consumers do not know that if they make a partial payment on an otherwise time-barred debt, Ocwen might treat this payment as an agreement to restart the statute of limitations on the otherwise time-barred debt, such that Ocwen might then sue for the remaining balance of the debt.

22.    The May 2014 collection letter is false, deceptive and misleading, because it has the tendency to mislead an unsophisticated consumer, whereas in fact the legal

6

status of the debt is materially better for Ms. Rivas if she does not pay any money to Ocwen, and would be materially worse if she does pay any money to Ocwen.

23.     In Virginia, failing to disclose a material fact constitutes false misrepresentation, where the concealing party knows that the other is acting upon the assumption that the fact does not exist. *See, e.g Van Deusen v. Snead,* 247 Va. 324, 328 (1994).

24.     When defendants failed to inform Ms. Rivas that her partial payment of the debt would put her in a materially worse position with regards to the legal status of the debt, knowing that most unsophisticated consumers were likely to be unaware of this fact, defendants committed a false misrepresentation within the meaning of Virginia law.

### 3. Defendant's Failure to Respond to a Qualified Written Request

25.     On December 5, 2014 Ms. Rivas's counsel sent a "Qualified Written Request" (QWR) as provided under RESPA, notifying the defendant of account errors and disputes with respect to the account. A file copy of this letter is attached hereto as Exhibit C, and its contents are expressly incorporated herein by reference.

26.     On December 8, 2014, the defendant acknowledged receipt of the QWR.

27.     The defendant failed to respond to the QWR, within 30 business days, by January 21, 2015.

28.     The defendant sent an incomplete response to the QWR on January 28, 2015. A copy of this letter is attached as Exhibit D and incorporated by reference herein. This late response failed to answer plaintiff's core question: was the second mortgage accelerated in 2007 or not? This information is necessary for her to determine her legal

7

position with respect to this purported obligation, and defendants failed to respond to this inquiry in the QWR, a previous letter, or in a call to a representative.

29.     The defendant's failure to provide an adequate, timely response by January 21, 2015 violated RESPA, as amended by the Dodd-Frank Act, which provides that such correspondence be answered no later than 30 business days after receipt of the QWR.

## CAUSES OF ACTION

### Count I – Violation of FDCPA – Communication not through Attorney as Directed

30.     At all times relevant to this action, defendant was a debt collector within the meaning of the FDCPA because it is a business which regularly collects and attempts to collect debts owed or due to another.

31.     Ms. Rivas is a consumer within the meaning of the FDCPA.

32.     By means of their communications as set forth above, sent to her directly and not to her attorney as directed in written communication, defendant violated the FDCPA, 15 U.S.C. § 1692c(a)(2), to Ms. Rivas's injury, and is thus liable to her in damages.

33.     Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as defendants intended to mail the letter that they did in fact mail to Ms. Rivas, not to her counsel as directed.

8

### Count II: Violation of FDCPA – Attempt to Collect Time-barred Debt

34.     By means of their false implications as set forth above, specifically that the debt was fully legally enforceable, defendant violated the FDCPA, 15 U.S.C. § 1692e(2)(A) and (10), to Ms. Rivas' injury, and are thus liable to her in damages.

35.     Defendant's noncompliance with the FDCPA was intentional within the meaning of 15 U.S.C. § 1692k, as defendants intended to mail the letter that they did in fact mail to Ms. Rivas, and did intend, by mailing that letter, to induce her to pay some or all of the alleged debt – a debt that was time-barred under the Virginia statute of limitations, and thus put her in a materially worse legal position with regards to the enforceability of the debt.

### Count III – Violation of RESPA – Failure to Respond to QWR

36.     On December 5, 2014, the plaintiff, though her attorney, sent defendant a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), requesting information (including but not limited to) whether the debt was accelerated, and information on how the debt was calculated. The plaintiff requested that defendant provide her with information and documentation supporting its claim that the plaintiff's account was in default.

37.     Defendant violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than 30 business days after receipt of the Plaintiff's qualified written request.

## Requested Relief

Wherefore, plaintiff Maria Rivas respectfully requests that this court provide the following relief:

38.     An award of statutory damages of $1,000, pursuant to the FDCPA, 15 U.S.C. § 1692k(a)(2), as well as actual damages (including emotional distress) as determined by the jury, pursuant to 15 U.S.C. § 1692k(a)(1).

39.     An award of plaintiff's costs and reasonable attorney's fees, as appropriate under the FDCPA, 15 U.S.C. §1692k(a)(3).

40.     An award of actual damages, as determined by the jury, pursuant to 12 U.S.C. § 2605(f)(1)(A), as well as statutory damages of $2,000, pursuant to RESPA, 12 U.S.C. § 2605(f)(1)(B).

41.     An award for plaintiff's costs and reasonable attorney's fees as appropriate under RESPA, 12 U.S.C. § 2605(f)(3).

42.     Such other and further relief as this court deems necessary and proper.

Plaintiff requests trial by jury.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____          Date: 3/3/2015
Simon Y. Sandoval-Moshenberg (VSB No.: 77110)
6066 Leesburg Pike, Suite 520
Falls Church, Virginia 22041
Ph: (703) 778-3450 x 605
Fax: (703) 778-3454
simon@justice4all.org
*Counsel for plaintiff Maria Rivas*